## W. M. IRWIN V. A. E. WALLING.

1. DEMURRER SUSTAINED—*When not Material.* Where the trial court sustains a demurrer to certain paragraphs of an answer and afterwards by an agreed statement of facts, the answer presented by such paragraphs is submitted to the court as fully as if no demurrer had been considered, and upon such agreed facts the trial court renders judgment, *held*, that it is immaterial whether or not the tr al court erred in sustaining the demurrer.

2. REPLEVIN—*Against Whom Instituted.* In replevin the action runs against the party in possession, and if he be an officer acting under an execution, he may be sued as an individual or as an officer.

3. CHATTEL MORTGAGE—*Execution—Exemption Right.* Property exempt by law from attachment and execution does not become subject to attachment or execution because of the fact that the owner gives a chattel mortgage thereon.

*Error from Probate Court of Garfield County.*

January 30, 1894, A. E. Walling instituted an action of replevin in the probate court of Garfield, then " O " county, against W. M. Irwin to recover certain personal property, and obtained judgment. To reverse the case Irwin appealed to this court. The opinion states the material facts.

*Boynton & Smith* and *S. W. Sweitzer*, for plaintiff in error.

*Havens, Orner & Parker*, for defendant in error.

The opinion of the court was delivered by

DALE, C. J.:   A. E. Walling commenced an action of replevin in the probate court of Garfield county, to

recover possession of personal property levied upon by W. M. Irwin, as constable, at the instance of certain execution creditors of Walling.    In his affidavit, filed as the basis of his action, Walling alleged that the property seized by Irwin was exempt by law from being so taken. Irwin's answer contained three paragraphs, in substance as follows: The first alleged that he was a constable and seized the property by virtue of an execution lawfully issued, and that prior to the levy of such execution the property had been mortgaged to one William Carrott to secure a debt of $100, which mortgage was unpaid and an existing lien against the property, and by reason of plaintiff's having executed such mortgage, the property was subject to the levy of the execution.    In the second paragraph of the answer, the defendant claimed that the property seized had previously been mortgaged to one A. H. Foss, to secure the purchase money thereof; that said mortgage was unpaid and that the giving thereof constituted a waiver of plaintiff's right of exemption in the property.    The third paragraph of the answer denied each and every allegation of the petition and alleged that he had been sued as an individual for the commission of an act done as an officer.    To each of the paragraphs of the answer plaintiff demurred, which demurrer was, as to the first and second paragraphs, sustained, and a motion by plaintiff as to the third paragraph sustained, to the extent of striking out all of that portion of such paragraph, except the general denial therein contained. The case was then submitted upon an agreed statement of facts, which concluded as follows:

" The only question in this case is the question of law, to-wit: Does the giving of a chattel mortgage on personal property, otherwise exempt from levy and sale under execution, make such property so mortgaged liable to

9—IV.

levy and sale on execution at the suit of another creditor than the mortgagee or his assigns while such mortgage remains unpaid? If yes, defendant should recover. If no, plaintiff should recover."

The trial court held in favor of plaintiff. The defendant below brings the case here to reverse the judgment of the trial court, assigning error in sustaining plaintiff's demurrer to portions of defendant's answer, and alleges that the petition and affidavit are insufficient, in that the facts therein stated do not entitle the plaintiff to judgment and that the judgment of the court is contrary to law.

I.   Whether or not the court erred in sustaining the demurrer to the answer is immaterial. The issue joined by the agreed statement of facts and submitted to the court for decision brought before such court the only material question raised by the answer, that being whether or not a party who gave a chattel mortgage upon property thereby waives the right of claiming his exemptions in whatever of interest he may still have in the property mortgaged. By that portion of the answer to which the demurrer was directed, it was claimed that the chattel mortgages given to Carrott and Foss defeated the right of plaintiff to assert that the property was exempt from seizure and sale upon execution. This being true. it must follow that the court did not commit prejudicial error in sustaining the demurrer, as, notwithstanding such ruling the material parts of the answer were as fully considered as if no demurrer had been sustained. (*Reynolds v. Reynolds*, 30 Kan. 91,) And defendant having without objection answered, he cannot now be heard to say that the petition and affidavit were insufficient, no question of jurisdiction being involved.

II.   Neither do we consider the allegations contained

in the third paragraph of the answer, stricken out on motion, as material.   In addition to the general denial contained in said paragraph, it is set forth that defendant is sued as an individual for the commission of an act done as an officer.   This allegation was, upon motion, properly held immaterial.   In replevin the action runs against the party in possession, and if an officer wrongfully seizes property to satisfy an execution, he may be sued either as an individual or as an officer.   In either case if he does not desire to defend he can compel the real party in interest to appear in the action.   Section 45, ch. 66, of our Code would seem to point out a way in which an officer, in cases similar to the one under consideration, may avoid the burden of a defense.

III.   The remaining question for our determination is the vital proposition in this case.   Did the trial court err in rendering a judgment holding that plaintiff below lost no exemption rights when he executed the chattel mortgages upon the property?   Counsel for appellant cite as authority for their contention § 27, ch. 51, Oklahoma Statutes 1893, which reads as follows:

"Personal property mortgaged may be taken under attachment or execution issued at the suit of a creditor of a mortgagor."

And it is claimed that such provision modifies ch. 34 of our laws, which relate to exemptions.   We do not agree with counsel for appellant.   Section 27, *supra*, was not enacted with the view to affecting exemptions, but to enable creditors to reach property which, in the absence of the statute, it is doubtful if creditors could subject to attachment or execution.   At common law neither a chattel pawned or mortgaged was liable to attachment in an action against the pawnor or mortgagor. (Jones on Chattel Mortgages, §. 555.)   And it was to

remedy this that many states have adoped statutes similar to ours, thereby giving, in express terms, a creditor the right to attach or levy an execution upon the interest of a mortgagor. We do not hold that under the equitable principles of our Code, the adoption of § 27, *supra*, was necessary in order to enable a creditor to reach a mortgagor's interest in property. But in the absence of the statute, a question would arise which the courts of this Territory might decide either way and find much in reason and authority upon which to base such decision. And to definitely settle this question was, we think, the reason for the action of our legislature. But there is a broader ground upon which to affirm the decision of the lower court. Under the head of exemptions, (ch. 34, *supra*,) our legislature has attempted to exempt certain property "from attachment or execution and every other species of forced sale, except as hereafter provided." The exceptions refer to corporations for profit, nonresidents, debtors in the act of removing from the Territory, and absconding debtors, none of which exemptions have any bearing in this case. It does not require a close reading of the law to determine that the legislature intended to liberally provide for debtors, as against attachment and executions, and to adopt the view contended for by appellant would be out of harmony with the manifest purpose of the law makers. Can it be successfully argued that the law intends to permit an exemption in favor of a man who is able to own unincumbered property and to take away such privilege as soon as his poverty or misfortune compels him to place a mortgage thereon? It would seem that such an argument must answer itself. The greater a man's poverty or misfortune the more need he has of the exemption law. The legislature intended the law as an aid to poor people who might be tempo-

rarily unable to meet their financial obligations, and for the purpose of permitting such persons to keep about them the necessary provisions upon which to subsist for a short time, and stock and tools with which to labor and obtain a living. Any constructions which would defeat such intention is not authorized. If we give to § 27, *supra*, its fair import and confine its effect to the law relating to mortgages, we can readily harmonize such section with the exemption law, and thus permit each to stand, working out in their separate ways the reasonable intent of our legislature.

The decision of the lower court is affirmed. All the Justices concurring.